DAS:AAS
F.#2010R002284

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M11-290

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

LIONEL EDWARDS,
also known as "Fifty,"

Defendant.

- - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT OF ARREST WARRANT

(T. 21, U.S.C., § 846)

EASTERN DISTRICT OF NEW YORK, SS:

MATTHEW M. RAMARGE, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

Upon information and belief, on or about and between January 1, 2010 to July 15, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LIONEL EDWARDS, also known as "Fifty," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved 500 grams or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(B)(ii)(II); Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been an agent with the DEA since 2008. I have participated in investigations of unlawful drug distribution and have conducted or participated in surveillance, undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants and reviews of taped conversations and drug records. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, and the methods of payment for such drugs.

2. I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from: (a)

---

[1] Because this affidavit is submitted for the limited purpose of establishing probable cause for an arrest warrant, I have not set forth each and every fact learned during the course of the investigation.

my personal participation in this investigation, (b) reports made to me by other law enforcement authorities, and (c) information obtained from confidential sources of information and cooperating witnesses.

3. Since 2007, the DEA has been conducting an investigation of an international drug trafficking organization (the "Organization") that operates in Brooklyn, New York; Atlanta, Georgia; Greensboro, North Carolina; Houston, Texas; and Richmond, Virginia, among other places. DEA agents have determined that a number of the members of the Organization use "trap vehicles" containing concealed compartments to transport drugs into and out of the New York metropolitan area.

4. In January 2010, the DEA arrested a member of the Organization (the "CW") who subsequently pleaded guilty to cocaine conspiracy charges, pursuant to a cooperation agreement. The CW has provided reliable information corroborated by independent evidence.

5. At the time of the CW's arrest, the CW was in possession of approximately 500 grams of cocaine. The CW informed the DEA, in sum and substance, that the cocaine was part of a larger shipment that the CW had recently received and subsequently distributed to clients located in Long Island. The CW further informed the DEA that the CW had recently provided 1 kilogram of the cocaine the CW had recently received to the

defendant LIONEL EDWARDS, whom the CW identified as a drug trafficker who operates within the Eastern District of New York.

6. On January 24, 2010, the CW made several recorded phone calls to the defendant LIONEL EDWARDS. In sum and substance and part, during one of these calls, the CW and EDWARDS arranged to meet at a location in Brooklyn, New York.

7. Acting at the direction of law enforcement, the CW met with the defendant LIONEL EDWARDS at the pre-arranged meeting location on January 24, 2010. The CW wore a recording device during the meeting, which was secretly observed by law enforcement authorities.[2]

8. Following the meeting, the CW provided approximately $17,000 in United States currency to DEA agents. According to the CW, the defendant LIONEL EDWARDS gave the CW this money during the meeting, as payment for 500 grams of the cocaine the CW had provided in January 2010 to EDWARDS.

9. I have reviewed the recording of the meeting between the defendant LIONEL EDWARDS and the CW. In sum and substance and in part, EDWARDS stated that he had "seventeen" for the CW. Additionally, EDWARDS stated, "I could have got rid of but them niggers said the numbers too high. If you got a better number, I could get more." Based on my training, experience, and

---

[2] Prior to the meeting, agents searched EDWARDS and EDWARDS's vehicle for contraband or United States currency. These searches yielded negative results.

knowledge of this investigation, I believe that EDWARDS stated that he was paying $17,000 to the CW for the 500 grams of cocaine previously provided to EDWARDS by the CW. I further believe that EDWARDS stated that he would have purchased additional cocaine from the CW, had the CW offered a lower price per kilogram.

10. On July 15, 2010, the CW made several additional recorded phone calls to the defendant LIONEL EDWARDS. I have reviewed the recordings of these phone calls. In sum and substance and part, during one of these calls, the CW and EDWARDS arranged to meet at a location in Nassau County, New York.

11. On July 15, 2010, acting at the direction of law enforcement, the CW met with the defendant LIONEL EDWARDS at the pre-arranged meeting location. The CW wore a recording device during the meeting, which was secretly observed by law enforcement authorities.[3]

12. During the meeting, agents observed the CW and the defendant LIONEL EDWARDS meet. Agents then observed EDWARDS walk to and meet with an unknown individual ("John Doe") driving a Nissan Sentra, and then return to meet with the CW.

13. I have reviewed the recording of the meeting between the defendant LIONEL EDWARDS and the CW. In sum and substance and in part, EDWARDS stated, "I told you I won't break

---

[3] Prior to the meeting, agents searched EDWARDS and EDWARDS's vehicle for contraband or United States currency. These searches yielded negative results.

it right?" In response, the CW stated, "I got to grab a whole one." Later during the meeting, the CW asked EDWARDS for a "sample." After EDWARDS stated, "Now you got this guy riding around with a joint and I thought you were ready to jump," the CW responded, "I do want it . . . . I don't have the change on me right now." After the CW stated, "I swear I told you I wanted to see the shit . . . I said you got some?," EDWARDS stated, "[I] didn't have it on me. I would have brought you to show you the shit. The shit is good. It ain't no bullshit. If you don't want it you can bring it back. I ain't able to open it up right here."

14. Based on my training, experience, and knowledge of this investigation, I believe that the defendant LIONEL EDWARDS agreed to provide one kilogram of cocaine to the CW. I further believe that, after the CW asked for a sample, EDWARDS stated that he could not unpack the cocaine, which was transported by John Doe on behalf of EDWARDS. I further believe that EDWARDS vouched for the quality of the cocaine.

WHEREFORE, your deponent respectfully requests that a warrant issue for the defendant LIONEL EDWARDS, also known as "Fifty," so that he may be dealt with according to law.

MATTHEW M. RAMARGE
Special Agent
Drug Enforcement Administration

Sworn to before me this
21 day of March, 2011

;E